UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIRK BRYANT SESSLER, | ) | CASE NO. 1:19-cv-03004 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| TOM MILLER, et al. | ) | **ORDER AND DECISION** |
| | ) | (Resolves Docs. 37, 42, 52) |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 37, 42). Defendants Medina County, Tom Miller, Deputy Rodney P. Rees, and Corrections Officer Charles J. Kozak (collectively, "Defendants") moved for summary judgment on all of Plaintiff Kirk Bryant Sessler's claims and Plaintiff moved for summary judgment on his Eighth Amendment claim. These matters are fully briefed. Defendants further filed a motion for sanctions for Plaintiff's failure to appear at his deposition. (Doc. 52). For the following reasons, Defendants' motion for summary judgment (Doc. 42) is GRANTED and Plaintiff's motion for summary judgment (Doc. 37) is DENIED. Defendants' motion for sanctions is DENIED. (Doc. 52).

**I.   FACTS**

Plaintiff was arrested on December 31, 2018. (Doc. 28-1, PageID# 205). He was taken to the Medina County Sheriff's Department ("Medina County Jail"). (*Id*.). Upon booking, pursuant to Medina County Jail policy a new prisoner must undergo a urinalysis to ensure the safety of the prisoners and staff prior to placement in the general population. (Doc. 42-2, PageID# 356). Plaintiff refused to give a urine sample and could not be placed in the general population until he a urinalysis was complete. (Doc. 42-1, PageID# 354). Accordingly, Plaintiff was held in a holding

1

cell until he provided a urine sample. (*Id.*). Plaintiff provided a urine sample after four days and was placed in the general population. (Doc. 42-2, PageID# 355; Doc. 42-3, PageID# 360).

On March 18, 2019, Plaintiff entered a plea to the charges and was sentenced to three years in prison with credit for the 79 days that he spent at the Medina County Jail. (Doc. 28-1).

**II.     LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant

must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. LAW AND ANALYSIS
#### A. Plaintiff's Claims against Individual Defendants

In his 42 U.S.C. §1983 action, Plaintiff asserts that during his arrest and time spent in a holding cell due to his refusal to submit to a urine test individual Defendants Miller, Rees, and Kozak violated his Fourth, Fifth, and Eighth Amendment rights. (Doc. 1, p. 1). He asserts that being forced to take a urine test violated his Fifth Amendment right against self-incrimination and his Fourth Amendment right against unreasonable search and seizure. (Doc. 1, p. 4). Plaintiff asserts that, while in the holding cell, he did not have access to running water or a toilet, in violation of his Eighth Amendment right against cruel and unusual punishment. (Doc. 1, p. 7). Defendants argue that Defendants Miller, Rees, and Kozak are entitled to qualified immunity. (Doc. 42, p. 2).

#### 1. Qualified Immunity

Qualified immunity shields government officials from civil liability in the performance of their duties so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Such immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). "Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting [the] government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158, 168 (1992).

Qualified immunity will ordinarily apply unless it is obvious that a reasonably competent official would have concluded that the actions taken were unlawful. *Ewolski v. City of Brunswick*,

287 F.3d 492, 501 (6th Cir. 2002). The qualified immunity analysis is a two-step inquiry: (1) whether a constitutional right has been violated; and (2) whether that right was clearly established, though the steps need not be taken in that order. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Qualified immunity provides immunity not only from liability, but also from trial. Whether qualified immunity is available is a question of law. *Cook v. Cincinnati*, 103 Ohio App. 3d 80, 85 (1st Dist. 1995). Therefore, whether a public official did or did not act reasonably under a specific set of facts is a matter for the court and may properly be determined by summary judgment. *Cook*, 103 Ohio App. 3d at 85. Thus, while a court must consider the facts in the light most favorable to the nonmoving plaintiff, the court – not the jury – must determine as a matter of law whether the facts show that the defendant violated clearly-established rights of which a reasonable officer would have known. *See Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988).

Moreover, even on summary judgment, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Cook*, 103 Ohio App. 3d at 85. A court must therefore grant summary judgment for the individual defendants if the undisputed facts, and any disputed facts viewed in the plaintiff's favor, fail to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Id*. at 86. For the reasons set forth below, Plaintiff fails to establish that his constitutional rights were violated. Therefore, the individual defendants are protected from liability on his constitutional claims and entitled to summary judgment on those claims.

          **a)**     **<u>Fourth Amendment</u>**

Plaintiff asserts that being forced to take a urine test violated his Fourth Amendment right against unreasonable search and seizure. (Doc. 1, p. 4). Defendants concede that state-compelled

collection and testing of urine constitutes a search for purposes of the Fourth Amendment. (Doc. 42, p. 11, citing *Skinner v. Railway Labor Executives' Assn*., 489 U.S. 602, 617 (1989)).

Pursuant to the Fourth Amendment, "the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652–53 (1995). In certain circumstances, "a search unsupported by either warrant or probable cause can be constitutional when 'special needs' other than the normal need for law enforcement provide sufficient justification." *Ferguson v. City of Charleston*, 532 U.S. 67, fn. 7 (2001) (citing *Acton*, 515 U.S. 646, 652–53 (1995), *O'Connor v. Ortega*, 480 U.S. 709, 720 (1987)). A search may constitute a "special needs" search if 1) the search is necessary for something other than the normal need for law enforcement purposes, and 2) it is reasonable. *Ferguson*, 532 U.S. at 78, 82.

"The Supreme Court has applied the 'special needs' doctrine to permit suspicionless searches involving the provision of urine samples." *Norris v. Premier Integrity Sols., Inc*., 641 F.3d 695, 698 (6th Cir. 2011) (citing *Acton*, 515 U.S. at 653). Defendants contend that the primary purpose of the urine test at issue here was for the safety of staff, the individual, and other detainees, and that the results would be not used for any criminal charges. (Doc. 42, p. 12; Doc. 42-1, PageID# 353 (affidavit of Dean Lesak)). Plaintiff acknowledges that the individual Defendants were following the applicable policy regarding urine tests. This policy states:

> Each inmate is required to submit to a drug screening. This will be conducted in the form of a urinalysis. These tests are used for medical, substance abuse services, and statistical data only. It will not be used to charge the inmate criminally. There will not be a chain of custody utilized in this process. The testing results cannot be released unless the inmate signs a record of release authorizing it or a court order is issued.

(Doc. 28-2, PageID# 211).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if prison administrators and not the courts, [are] to make the difficult judgments concerning institutional operations." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987) (internal quotations omitted). Here, Medina County Jail Administrator Dean C. Lesak averred that "the sole purpose [of the policy] is to ensure that there is no medical condition that might arise with the detainee, such as a drug response." (Doc. 42-1, PageID#353). Lesak further explained that "[u]nfortunately, the effects of the drugs and various medical conditions require that the jail confirm by urine sample whether drugs or other conditions might pose a risk to detainees or staff." (*Id.* at PageID# 354). Plaintiff provides no argument or evidence to challenge Defendants' assertion that the urine test under the policy was for safety, rather than for normal law enforcement purposes. Because the individual Defendants were applying the applicable policy and Plaintiff cannot establish as a matter of law that the policy violates his constitutional rights, the individual Defendants are subject to qualified immunity. Therefore, Defendants' summary judgment motion on this claim is granted.

### b) Fifth Amendment

Plaintiff asserts that being forced to take a urine test violated his Fifth Amendment right against self-incrimination.[1] (Doc. 1, p. 4). Pursuant to the Fifth Amendment, no person "shall be compelled in any criminal case to be a witness against himself." *Malloy v. Hogan*, 378 U.S. 1 (1964). Here, the policy explicitly states that the urinalysis "will not be used to charge the inmate

---

[1] Although Plaintiff's "Deprivation of fifth amendment" claim states "no one shall be compelled or forced to engage in [] self-incrimination or deprived of life and liberty without due process of law U.S.C. and 14th Amendment" he does not argue nor establish that he has been deprived of property or liberty interest for purposes of summary judgment.

criminally." (Doc. 28-2, PageID# 211). Further, Lesak explained that "at no time has the urine sample requirement been applied for any reason other than to ensure the safety of the detainees and administration and staff of the Medina County Jail." (Doc. 42-1, PageID# 354). Accordingly, Plaintiff's urine sample was never going to be used against him in a criminal case. Further, as noted above, the policy is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Because the individual Defendants were applying the applicable policy and Plaintiff cannot establish as a matter of law that it violates his constitutional rights, the individual Defendants are subject to qualified immunity. Therefore, Defendants' summary judgment motion on this claim is granted.

c) **Eighth and Fourteenth Amendment**

Plaintiff contends Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by placing him in a holding cell for four days and "then denying me medical care" after he refused a urinalysis upon booking, prior to his conviction. (Doc. 1, p. 3, 8). The Eighth Amendment does not apply pre-conviction.

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. See *United States* v. *Lovett*, 328 U.S. 303, 317-318 (1946). [The] State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Bell,* 441 U.S. at 599, quoting *Ingraham v. Wright*, 430 U.S. 651, 671-672, n. 40 (1977) (internal quotations omitted). Because the Eighth Amendment is only applicable after a formal adjudication of guilt, Plaintiff's Eighth Amendment claim is without merit.

Although not specifically detailed in his complaint, Plaintiff asserts in subsequent filings that "the Due Process Clause applies to the conditions of pretrial detention" and that his due

process rights were violated when he was placed in a holding cell with "no toilet no running water, when all other prisoners had water and toilet" and without necessary medical treatment. (Doc. 32, PageID# 247). In opposition, Defendants point to the affidavits of Deputy Rees and C.O. Kozak. Rees and Kozak aver that Plaintiff was never denied access to water, toilet facilities, or medical care while he was in the holding cell. (Doc. 42-2, ¶9-11; Doc. 42-3, ¶9-11.) Plaintiff does not point to any evidence to establish that there is a question of material fact regarding the holding conditions.

Further, Plaintiff provided the Court with medical records that indicate that on January 2, 2019, while in the holding cell, he refused medical treatment. (Doc. 32-1, PageID# 265). Specifically, Plaintiff refused to take his evening medications, was informed that his refusal could affect the treatment of medical/mental health problems, and released the "attending physician, nurses, correctional officers and this jail from all liability for injury to my health cause by this action." (Doc. 32-1, PageID# 265). This evidence directly contradicts Plaintiff's allegations that Defendants withheld medical treatment. Plaintiff has not and cannot establish that there is a genuine issue of material fact regarding these issues.  Accordingly, Defendants' summary judgment is granted on these grounds.

### d) **Plaintiff's Remaining Claims**

Plaintiff summarily asserts claims for extortion, emotional distress, medical negligence, black mail, breach of duty, inhumane treatment, inhumane conditions of confinement, culpable, gross negligence, wrongful conduct, and inadvertent negligence. (Doc. 1, PageID# 1). Defendants correctly note that Plaintiff has not provided any evidence to support these claims. On the other hand, Defendants point to the affidavits of Lesak, Rees, and Kozak as evidence that the individuals were properly following the policy and Plaintiff did not suffer any wrongful or inhumane treatment

in the holding cell. For the reasons set forth above, Plaintiff has not established that there is a genuine issue of material fact regarding the urinalysis and his subsequent time in the holding cell. Accordingly, Defendants' summary judgment is granted.

### B. Plaintiff's Claims Against Medina County

Plaintiff brings claims against Defendant Medina County. The Court recognizes that municipalities may be liable for damages under 42 U.S.C. § 1983 when a deprivation of federal rights results specifically from a city policy or custom. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Plaintiff's municipality liability claims fail because, as discussed above, he does not establish an underlying constitutional violation by the individual Defendants. Accordingly, summary judgment is awarded to Medina County on these claims.

### IV. Conclusion

For the reasons set forth herein, the Defendants' motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED. Defendants' motion for sanctions is DENIED.

IT IS SO ORDERED.

DATE: March 30, 2022

/s/ *John R. Adams*
Judge John R. Adams
UNITED STATES DISTRICT COURT